UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
FILED
January 31, 2006
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FOM PUERTO RICO, S.E., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | 3:05-CV-00333-R |
| DR. BARNES' EYECENTER, INC., EYEMART EXPRESS, LTD., CORPORATION ABC, RICHARD ROE, JOHN DOE | § § § § § § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendant Eyemart Express Ltd.'s Motion for Summary Judgment (filed November 21, 2005). After review and consideration of the parties' submitted materials and relevant case law, this Court is of the opinion that the Motion should be **GRANTED**.

### I. BACKGROUND

On November 21, 1997, FOM Puerto Rico, S.E. ("FOM Puerto Rico") entered into a Retail Lease Agreement (the "Lease Agreement") with Eyetems International, Inc. ("Eyetems"). According to the Lease Agreement, FOM Puerto Rico agreed to rent retail space within the Belz Factory Outlet World Shopping Center in Canóvanas, Puerto Rico. The lease was to expire on November 21, 2004. Eyetems stipulated that it would be liable for all obligations and duties arising under the terms of the Lease Agreement notwithstanding early termination.

On July 10, 2000, the Lease Agreement was assigned to Dr. Raymond Rodríguez Morales and Dr. Yanira García De La Cruz (d/b/a Lens Vision Outlet). Dr. Morales and Dr. De La Cruz assumed all liabilities and duties under the Lease Agreement. On December 11, 2003, with FOM

Puerto Rico's consent, they assigned the Lease Agreement to Dr. Barnes' Eyecenter, Inc. ("DBEI"). DBEI in turn assumed all liabilities and duties under the Lease Agreement, and agreed that the Lease Agreement would expire on August 21, 2008. FOM Puerto Rico alleges that on the same date, Eyemart Express, LTD ("Eyemart"), an affiliate of DBEI, entered a Guaranty of Lease with FOM Puerto Rico whereby Eyemart unconditionally guaranteed the payment and performance of all liabilities, obligations, and duties under the Lease Agreement.[1]

On or about February 15, 2004, DBEI abandoned the lease property, and filed for Chapter 11 Bankruptcy in the District of Delaware on March 9, 2004 ("DBEI bankruptcy case"). The next day, FOM Puerto Rico filed a Complaint against DBEI, Eyemart, Corporation ABC, Richard Roe, and John Doe (collectively, "Defendants") in the United States District Court for the District of Puerto Rico claiming breach of contract (the "Breach of Contract Action"). Plaintiff alleged that DBEI breached the Lease Agreement, and that Eyemart had unconditionally guaranteed the payment and performance of all liabilities, obligations, and duties arising under the Lease Agreement. *See FOM Puerto Rico, S.E. v. Dr. Barnes' Eyecenter, Inc., et al.*, Civil No. 05-00333, United States District Court, Northern District of Texas, Docket No. 1.

DBEI filed a notice of bankruptcy in the Breach of Contract Action, staying the action against him in accordance with 11 U.S.C. § 362(a). Shortly thereafter, Plaintiff filed a proof of claim in the DBEI bankruptcy seeking recovery for rent owed under the Lease Agreement. Eyemart had also filed a proof of claim in the DBEI bankruptcy. On August 10, 2004, DBEI submitted its Original Liquidating Plan (the "Plan") which was confirmed by the Bankruptcy

---

[1] Eyemart denies this allegation, stating that "an individual" signed the Guaranty of Lease without Eyemart's authorization to do so. *See FOM Puerto Rico, S.E. v. Dr. Barnes' Eyecenter, Inc., et al.*, Civil No. 05-00333, United States District Court, Northern District of Texas, Docket No. 8.

Court by Confirmation Order. *In re Dr. Barnes' Eyecenter, Inc.*, case no. 04-33104-HDH-11, Docket No. 94. Section 5.03 of the Plan states in pertinent part:

> Any claims held by Debtor's insider, including but not limited to Debtor's affiliate Eyemart Express, Ltd., shall be subordinated to the claims of all other creditors. . . In return for the subordination of their claims, Debtor's insiders shall not have or incur any liability to any person for any claim, obligation, right, cause of action or liability, whether known or unknown, forseen or unforseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction or occurrence from the beginning of time through the Effective Date in any way relating to DBEI, its Bankruptcy Case, or the Plan; and all claims based upon or arising out of such actions or omissions shall be forever waived and released.

Def.'s Mot. Appx. at 24 (Exh. B).

The Breach of Contract Action was transferred here pursuant to 28 U.S.C. § 1412 on February 16, 2005 as a related proceeding to the DBEI bankruptcy case. Eyemart submitted its Motion for Summary Judgment pursuant to Rule 56(c) on November 21, 2005, claiming that the Plan, confirmed by the Bankruptcy Court, barred Plaintiff's lawsuit.

## II. ANALYSIS

### A. Rule 56(c) Standard

Federal Rule of Civil Procedure 56(c) authorizes judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affadavits, if any, show that there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is material if it involves a fact that might affect the outcome of a suit under governing law. *See Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The court must decide all reasonable doubts and inferences in the light most favorable to the non-moving party. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). As long as there appears to be some support for the disputed

allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Once the moving party has satisfied this burden, the non-moving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The court must inquire as to whether there is sufficient evidence upon which reasonable jurors could properly find by a preponderance of the evidence that plaintiff is entitled to a verdict. *Anderson*, 477 U.S. at 249-50. In other words, summary judgment will be granted "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A "sufficient showing" consists of more than a scintilla of evidence in support of the moving party's position. *Anderson*, 477 U.S. at 249-50; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986) (stating that "conjecture alone" was insufficient to raise an issue as to existence of an essential element).

**B. Res Judicata Effect of Bankruptcy Confirmation Order**

Eyemart claims that in exchange for subordination of its claim in the DBEI bankruptcy case, it was released from any liability arising from or related to the actions of DBEI and that this lawsuit is barred by the principle of res judicata under *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987). Def.'s Mot. at 6 ¶ 2. FOM Puerto Rico counters that because the Plan does not specifically mention Eyemart's lease obligation, Eyemart does not fall into the contours of *Shoaf* as a safely-released insider-guarantor. Pl.'s Resp. at 2.

Neither party disputes that a bankruptcy court's confirmation order expressly releasing a third-party guarantor is to be given res judicata effect. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987). In *Shoaf*, the bankruptcy court confirmed a reorganization plan that released a guaranty executed by Shoaf in favor of creditor Republic Supply Co, Inc.. *Id*. at 1049. Prior to the confirmation of the plan, Republic had initiated an action on the guaranty against Shoaf. *Id.* at 1048. Yet Republic neither objected to this provision of the plan in bankruptcy court, nor did it appeal the confirmation. *Id.* After the plan was confirmed, Shoaf raised the defense of res judicata in the guaranty action. The Fifth Circuit accepted this argument, holding that Republic's bypassed its remedy by failing to raise its claims at the confirmation or on appeal. *Id.* at 1050.

Thus, the Court turns to the question of whether one of two issues remains for trial. The first is whether the Plan is a clear and "unambigous plan. . . [that] expressly released" Eyemart from any liability it might have incurred when DBEI abandoned the Lease Agreement. *Id.* at 1049-50; *see also In re Taylor*, 203 F.3d. 914, 918 (5th Cir. 2000) (noting that the bankruptcy court's confirmation order in *Shoaf* "included express language noting the release of the guarantor"). The second is whether this release was an "integral part of the plan of reorganization." *Shoaf,* 815 F.2d at 1050.

As to the first issue, FOM Puerto Rico argues that the release at issue is not covered by *Shoaf* because it is a general release that does not contain a specific discharge of Eyemart's guaranty. *In re Applewood Chair Co.*, 203 F.3d 914 (5th Cir. 2000) (hereinafter, "*Applewood*") is instructive. In *Applewood*, the creditor ("Three Rivers") loaned money pursuant to a promissory note to Applewood Chair Company ("Applewood"). Applewood's director, Ronnie Spivey, and his wife, who was also a shareholder, personally guaranteed the loan with a mortgage note. Applewood filed for bankruptcy and Three Rivers sought to foreclose the mortgage agreement given by the Spiveys to guarantee Applewood's obligation, *Applewood*, 203 F.3d at 918. The Spiveys claimed that under *Shoaf* the release language of the bankruptcy court's confirmation order barred Three Rivers's claim. *Id*.

The reorganization plan confirmed by the Bankruptcy Court in *Applewood* contained no language specifically releasing the personal guaranties of the Spiveys. *Id*. at 919. Instead, it contained a one-sentence, general release stating:

> The provisions of the confirmed plan shall bind all creditors and parties in interest, whether or not they accept the plan and shall discharge the Debtor, its officers, shareholders, and directors from all claims that arose prior to Confirmation.

*Id.* The Spiveys argued that this release discharged their guaranty as Applewood shareholders and officers. The Fifth Circuit, however, declined to release the Spiveys, holding that the lack of specific discharge of guarantors in the release language distinguished *Applewood* from *Shoaf*. *Id.*

While the general reference to "all claims" in the *Applewood* release did not specifically release the guarantors, the release here does contain sufficient language that clearly intends to have the effect of releasing Eyemart's guaranty. It states:

> Any claims held by Debtor's insider, *including but not limited to Debtor's affiliate Eyemart Express, Ltd.*, shall be subordinated to the claims of all other creditors. . . In return for the subordination of their claims, Debtor's insiders shall not have or incur any liability to any person for *any claim, obligation, right, cause of action or liability*, whether

>known or unknown, forseen or unforseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction or occurrence from the beginning of time through the Effective Date in any way relating to DBEI, its Bankruptcy Case, or the Plan; and all claims based upon or arising out of such actions or omissions shall be forever waived and released.

Def.'s Mot. Appx. at 24 (Exh. B) (emphasis added). It specifically references the subordination of claims belonging to "affiliate Eyemart Express, Ltd." in exchange for the release of any obligation related to the Plan. Def.'s Mot. at 24 (Exh. B). Eyemart is specifically identified. In fact, the very definition of "Insiders" contained in the Plan specifically includes Eyemart. Def.'s Mot. Appx. at 7 (Exh. B).[2] While the class identified and the nature of the claims to be released are broad in scope, unlike the class in *Applewood*, they are identified specifically by the Plan.

Furthermore, not only is the confirmed release specific, but it is integral to the Plan as a whole. Implicit in the *Shoaf* holding was the rationale that the guarantor release provision was an "integral part" to the plan of reorganization. *Shoaf*, 815 F.2d at 1050; *see also Enterprise Financial Group, Inc. v. Curtis Mathes Corp.*, 197 B.R. 40, 44 (E.D. Tex. 1996) (distinguishing a retention-of-jurisdiction provision from a guarantor release provision by stating that the former is not "integral" to the plan of reorganization in the case at bar). The Court is persuaded by Eyemart's argument of specificity distinguishing the *Applewood* general release. Def.'s Mot at 14 ¶ 23. The *Applewood* release was not part of a compromise or the treatment of a class of creditors, while the DBEI release was a "request pursuant to Bankruptcy Rule 9019 to approve this compromise and release" that was later confirmed by the Bankruptcy Court. Def.'s Mot. (Exh. B), 36 (Exh. C). Here, as in *Shoaf*, the release is clearly a condition of settlement between the creditor insiders, including the creditor on the guaranteed debt. The release of any guaranty

---

[2] "Insiders shall have the same meaning as defined in Section 101 of the Bankruptcy Code, and shall include Eyemart Express, Ltd." Def.'s Mot. at 7 (Exh. B).

was given in consideration "for [t]he subordination of [Eyemart's] claims." Def.'s Mot. Appx. at 24 (Exh. B).

Finally, the Court notes that to find a genuine issue of fact in the present case would be to allow the Plaintiffs to relitigate an issue that could have been raised at confirmation, or shortly thereafter. *See Enterprise Financial Group*, 197 B.R. at 47. Plaintiff received notice of the Disclosure Statement, the Plan and the Confirmation Order, all of which contained the Section 5.03 release language, and could have rightfully filed a limited objection to any of those three documents, or in the alternative, appealed the bankruptcy decision. The Court declines to thwart the intent of the Fifth Circuit in such a manner. *See id.* (noting that *Shoaf* "attempted to advance the policies of certainty and reliance underlying res judicata which are particularly important in the Chapter 11 context").

**B. Res Judicata Elements**

Having found that the Bankruptcy Order is entitled to the effect of res judicata, the Court now considers whether the well-settled elements necessary to apply res judicata are met. Specifically, "the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases." *Shoaf* at 1051 (citing *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc)).

The elements set forth by the Fifth Circuit are satisfied here. The record in the Bankruptcy Court shows that both FOM Puerto Rico and Eyemart participated in DBEI bankruptcy case. Def.'s Mot. Appx. at 44 (Exh. F). The Confirmation Order was rendered by a court of competent jurisdiction and was a final judgment on the merits. Def.'s Mot. Appx. at 11-14 (Exh. A), 34-39 (Exh C). Finally, the same cause of action - the Defendant's guarantee which

was released pursuant to the Plan - is involved in both the present case and DBEI bankruptcy case.

As the elements of res judicata apply to the case at bar, Plaintiff's claim is barred by the Bankruptcy Court's Confirmation Order, and no genuine issue of material fact remains for trial.

### III. CONCLUSION

For the reasons stated above, the Motion to Dismiss are **GRANTED** and the claims against Eyemart in this case are **DISMISSED.**

**It is so ORDERED.**

**SIGNED this 31 day of January, 2006**

_____
**JERRY BUCHMEYER
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**